I guess somebody needs to go and check with counsel. Well, the other argument was so short, they probably don't realize we're ready. Okay. Thank you. Yeah. Great. . . . . . . . . . . . . .  . .   . . . . . . . . . . of min objections . . . . of r new . To come forward . The evidence that came in was objectionable because of three reasons that were posed by trial counsel. From the outset. Number one, it was hearsay. And it was used as hearsay throughout the trial. The trial judge on summary judgment gave a stern admonition that it should not be that it was admitting this evidence. Particularly the voluminous exhibit six. Which you'll find in the record. Because it was only being used for its effect on the listener. It was not being used for the truth. But again and again in the trial. My opponent or opponent trial counsel used it for the truth. Again and again. And these were some. Some sort of limiting instruction given by the judge about exhibit six. Instruction given about the judge about exhibit six was he was only admitting it for the effect on the listener. The administrator, Provost Bullard. Limiting instruction to the jury. Instruction to the jury was it was for the effect on the listener. As I recall. Okay. But that's not the way it was used in the trial. Again and again. Trial counsel. Defense counsel asked is this true? Are you saying that the students are lying? Did you now. I understand about a motion in limine and a ruling. But did you object when it said is this true? Did you request a sidebar with the judge to say your honor. They're violating your ruling on exhibit six. No. Trial counsel did not do that because trial counsel had raised this previously and believed he could stand on the rules as amended in 2000. Yeah. But when the judge agrees on the rules and then someone violates them during trial, you do have to object. Your honor. That's nothing that was changed in 2000. That's just life. Well, in that case, I think that there should be direction from the court to that effect. Because I think practitioners believe that if they raise things in a motion in limine, they're preventing the activity of consistent objections. Well, yes and no. I mean the fact is if the judge disagreed with you, then maybe you don't have to keep objecting. But if the judge agreed with you, then yeah. You're making a face. But in my experience, granted it was a state district judge. Lawyers objected a whole lot. I didn't notice that they were shy about objecting. Maybe federal district court lawyers are a little different. I hadn't had as much in federal district as I had in state district. All right. I'll move on, Judge. But this is not what the rule says, 103B. 103B says, not needing to renew an objection or offer a proof. That's what it says. Well, but the distinction is they were violating the judge's in limine ruling. It wasn't where you had lost. You didn't have to object again if they just were using it as the effect on the listener. If you had lost on that ruling, you won on the motion in limine. You at least had to alert the magistrate judge. The parties agreed to this case being tried by a magistrate judge. I take it from a couple of your answers, you did not try this case. I take your point, but it's not . . . Well, my question to you is you did not try this case. That's correct. So, it's an interesting question, but did the judge ever give a limiting instruction to the jury, either when all of this started or when the charge was given to the jury? Ladies and gentlemen, you've heard testimony from this Exhibit 6. It is not to prove the truth of the matter stated, but simply the effect on the listener. Your Honor, I don't know. I don't recall. I didn't read the charge over recently. I suspect that he probably did. Okay. Now . . . You should have read it recently, and you should know the record. I tried to, Judge. Okay. Secondly, I think that a mistrial should have been granted. The judge was emphatic after he received the indication that ten days before trial, almost five months after discovery, that there was going to be new evidence that disputed the core of Plaintiff's case, which was temporal retaliation, and that there were documents, some of them heavily redacted, that were turned over by the defense, indicating that . . . Well, they didn't really know if they had turned them over or not. I don't know about that. There were no bank stamps on the documents, and the Plaintiff's Counsel moved for sanctions. What the judge did, and you can read the order, he said emphatically, you may not give a specific date upon which the defendant decided to remove Judge Wilder. And how did that ever occur when I think the closest they came, and this was the point made during closing argument, and I don't believe an objection was made, was it could not have been later than a specific date, but there was nothing about a decision being made on a specific date. Well, I think that was the . . . The date was given of June 8, 2018. I think a specific date actually was . . . Could not have been later than. Yes, I think that's a specific date in a case like this. Well, should have objected. Well, Your Honor, she gave it, and as soon as the closing was over, I think my predecessor was a gentleman who didn't get up and object during the closing. He was a what? Gentleman. A gentleman? Yes. I didn't know that came into protecting your client's rights. I thought you were supposed to make a timely objection. That's the first time I've ever heard the gentleman exception to timely objecting. It was within three minutes at the end of the closing. He went up to Cy Barr, and he said that she breached the rule, Your Honor. She mentioned a specific date. It eviscerated his case. Now, what the defense says is that, well, it wasn't given in the evidence. It's only a judicial . . . it's only a remark made in closing, and I would say that this Court, in Montana and other cases, has said that that is a judicial admission. There's no chance to cross-examine that, by the way, when it is said . . . Counsel had rebuttal after the defendant. There's no rebuttal after that. No rebuttal argument? I don't believe so, no. So, I would suggest that that was very serious. And the judge gave a limiting instruction. He did not. He said . . . he just denied it, and that was very serious. Well, he gave an instruction to the jury, comments of lawyers are not evidence. That's a limiting instruction. Your Honor, I think that this went too far. I think this crossed the line. She was warned very seriously. The State was warned, and . . . Have you reviewed all of our cases on this? We have a ton of cases on closing arguments in criminal cases where they said, you know, the prosecutor went too far, and so on and so forth. And we have analyzed that and even agreed that it was something that was improper and nonetheless not agreed that that meant there should be a new trial. Now, I'm not saying that justifies doing something improper. Don't misunderstand me. But it's a high standard is what I'm trying to say. Are you aware of that? Yes. I've read many of your cases, Judge, including, well, Montano. I've read Egan. I've read some others. But what I would say is this is different. This is when she was given an admonition. Do not use a specific date, which was in italics, in the order. And she did. And it eviscerated the plaintiff's case. And it was very, very prejudicial. So I think that, you know, when judges give you an order after you turn in evidence late, after discovery, on the brink of trial, I think that's serious. And I don't see that . . . Well, and the judge will think so because they're the ones who made the order. And so why aren't we deferential to what the judge did on that? The judge made that order and knew whether it was violated and what the order was and so forth. Now, I realize we have the right to review, and I'm not suggesting we can't reverse district judges or magistrate judges serving as district judges. I'm just asking why that's an abuse of discretion. I think that is an abuse of discretion. If you let in late, after discovery, very, very serious information, you give a warning. You say you're not going to implement sanctions this time, and you are very specific, and then it's breached. I don't know what else to say. I think that this was a loss of control of the trial, quite frankly, and of my client's claim, which was presented in good faith. Okay, now I'd like to speak to the matter of the second institution where Judge Wilder went to work after SFA. That was a small college in Pittsburgh called Carlo University, and she lost her job nine months later. She was not renewed. Now, what the judge did over objection was he— and I think this is extremely serious, and I have not seen this before in any case. What the judge said was, you can raise to the defense that she was discriminated against. She has to admit that she was a victim of discrimination at the second school. Now, there was no need for that. This is a damages question, but she was portrayed then as a serial, thin-skinned discriminator, and the damages, incidentally, in the other case were not in litigation. It was in an EEOC probe that was closed, and it was for disability, not for gender. This is very serious. I mean, plaintiffs all the time want to say, well, you discriminate against my client on the basis of gender, so you must have done that on the basis of race. We don't allow that. That's a conflation. That is very, very prejudicial, and it was very, very prejudicial in this case. By the way, there was a rebuttal in the closing argument. There was what? A rebuttal. You said there wasn't one. I just looked on the— Why is that? It was after the argument about the motion for mistrial, but it was definitely done. It wasn't long. Thank you, Your Honor. Okay. Then there's the issue of not letting in a somewhat parallel case where a professor was accused of various types of both economic and alleged harassment. It was being handled by a dean named Guidry who said that he, by policy, had to turn this in. This is Exhibit 68 in the record. He had to turn this in as a matter of harassment to be investigated. Well, Dean Murphy, who was involved in this case also, only investigated the pay disparity. Now, I don't think that there is an HR department in this, in any university that I've dealt with, and that's a lot, or a general counsel who, after there is a report of alleged discrimination, wouldn't pursue that, wouldn't say that has to be investigated. But they didn't investigate that in this case, and that is a disparity which shows pretext. It should have been at least investigated, but the man was given a pass on that. So I think that the information that came in to the trial, mainly on hearsay grounds, was extremely prejudicial, extremely prejudicial, and the prejudice clearly outweighed any probative effect. To say, to bring in a Texas crime, a restrained crime, to bring in that you talked about politics in class, and you warned us about if President Trump was elected, that would be a mistake. Don't remember the exact words, but there are many of those things. In addition, even though in Exhibit 92 interrogatories, Part 5, the state admitted that it was only about, when I say the state, the university admitted, that it was only about faculty and student complaints. They reviewed staff complaints, both in Exhibit 92, I'm sorry, in Exhibit 6, and in court, in replete detail, and I think that would have offended the jury tremendously. So I don't think, I think there are problems here, and I hope that they will be considered, and I hope that there will be another day in court for Dr. Wilder. Thank you very much. I think I have three minutes to revise. Yes, thank you, Mr. Lieber. You saved time for a vote. Ms. Hilton? Good morning. May it please the Court. To succeed on her appeal, Dr. Wilder needs to establish that the district court either abused its discretion or committed plain error in making certain evidentiary rulings and in denying her motion for mistrial. As this court, I think, has recognized through the questioning to my friend on the other side, this is just as high standard that she cannot beat, meet, excuse me. The court should affirm the district court's rulings because it didn't err. In her first issue, Dr. Wilder contends that the district court erred in admitting Defendant's Exhibit 6, which is a 96-page compilation of complaints from students, faculty, and staff. I'm sorry. I want to make sure I note correctly what you said at the start. Either abuse of discretion or plain error? Your Honor, yes. I understand now. I just want to make sure I didn't hear plain error. Okay. Thank you, Your Honor. And while Dr. Wilder raises a host of objections about Defendant's Exhibit 6 here on appeal, I'd like to focus on the one that I think that she has preserved in her motion in limine and the only one that she brings here that is preserved, which is her 403 objection. While she made a hearsay objection in her motion in limine and in the pretrial conference, in her opening brief, Dr. Wilder mentioned hearsay appears one time in the opening brief. I don't believe that that is the main issue here on appeal. I believe that she has briefed this as a 403 issue, but that's not something that SFA relies on. The court need not rely on that to affirm the district court's ruling. It was not hearsay because these complaints formed part of the basis for SFA's decision not to renew her contract. This exhibit was compiled and maintained by Dr. Avent. Is it your point that if a lot of the students just don't think this person is a good professor, that that is enough, even if their complaints are not necessarily based on complete accuracy? Yes, Your Honor. Both for Title VII, this is a legitimate non-discriminatory reason that is not based on her sex forming the basis for the non-renewal. It also complies with SFA policy that allows a probationary professor to be non-renewed for no reason or any lawful reason. So just a bunch of students complaining is enough, is what you're saying. So that's what Exhibit 6 is telling us, people complaining even if you got into detail about the complaint and said, well, like here the appeal kind of said, okay, well, not enough to get to harassment, but enough to complain about. Yes, Your Honor. If someone isn't harassing me, if they're just making me feel bad every time I see them, then they may not be someone I want to see. Yes, Your Honor. It is any reason that is not based on a protected class, and this is a legitimate non-discriminatory reason. And these complaints were quite serious. In SFA's view, the effect of these complaints on SFA was to be concerned for the welfare of their students. In Dean Murphy's report, he noted that he believed that Dr. Wilder's continued interaction with students would pose a serious risk to them on both an academic and personal level. And so combined with faculty and staff complaints, it formed a strong basis for SFA not to renew her contract. And just for this tape, for this recording, and perhaps for some way of looking at this case, she was teaching in the master's program. These were not undergrads. Yes, Your Honor. These were master's students. That's true, Your Honor. These were also students who, as part of that master's program, existed in a cohort through the university. So they were enrolled in all of the same classes, and there was testimony at trial from Dr. Avant that no other professor in that program was getting these complaints from students. And so that lent credence to the fact that it wasn't some disgruntled students that were out to get a professor, but actually that it was the professor who had an issue with the students. Your Honor, I did want to address Mr. Lieber's point. He argued that Dr. Wilder, that I asked her whether these complaints were true. So I do want to back up for a minute just to the hearsay issue. I would like to note for the court that Dr. Wilder was the one who opened the door to that issue in her cross-examination. At page 2435 of the record, I asked Dr. Wilder if she acknowledged that students had complained and that she wasn't contesting the existence of this evidence. In other words, that she wasn't contending that SFA had ginned up these complaints, they weren't actually real complaints that they had received, and that formed the basis for the decision. And in response, she said, I do not believe all those complaints were true. And that led to a series of questions about Defendant's Exhibit 6, because she had testified in direct that she had been contrite and she was deeply sorry for how things had unraveled, that she had apologized to students. And so when she said she didn't believe they were true, this then became impeachment. But it also demonstrated, and that being a demonstration of the effect of these complaints on SFA. OK. The remaining objections, Mr. Lieber didn't spend too much time on these, so I won't either. But the remaining objections that she has brought here on appeal to Defendant's Exhibit 6 about First Amendment defamation per se, those were not bases that counsel objected to at trial. So the district court could not have abused its discretion in admitting these on those bases, because it wasn't offered an opportunity to rule on that. And the court is not required to imagine all of the ways in which this exhibit could have been unduly prejudicial to her case. The federal rules require her to state the specific grounds for her objection and get a ruling on that. She did not do that on her First Amendment or defamation objections. So likewise, the court did not abuse its discretion in admitting the staff complaints that are included in Defendant's Exhibit 6. That staff complaints were relevant to SFA's decision not to renew her contract was demonstrated by other testimony and other exhibits that were offered at trial, and that she does not raise an issue with on appeal here. For example, Plaintiff's Exhibit 31, which is page 2650 of the record, is her annual faculty evaluation that notes that Dr. Wilder needs to focus on managing her expression of emotions with students, faculty, and staff. And it goes on with another reference to staff. There is Dr. Avance testified that faculty, students, and staff all visited his office, all complaining about her behavior. Dean Murphy testified the complaints were unprecedented, and he noted that it wasn't just students. It was also faculty and staff as well. And so the court certainly did not abuse its discretion in trying to differentiate between who was a staff member in this complaint and who was a faculty or student. With respect to her final issue with this exhibit, she contends that the ultimate decision maker, Provost Bullard, did not review every single one of these pages, and therefore, it was irrelevant and should have been excluded. And Mr. Lieber noted Plaintiff's Exhibit 92 includes Plaintiff's Interrogatory No. 5 to SFA that includes, in part, that faculty and student complaints formed part of the basis to not renew her contract. But that's not what the interrogatory states in full. And neither Provost Bullard's testimony nor SFA's response to that interrogatory limit the basis for her renewal to faculty and student complaints. It's a fuller paragraph, and it's at the record at 2270. But I do want to be mindful of the court's time and also move through these other things. Even if the court did err in admitting any portion of Defendant's Exhibit 6 or Defendant's Exhibit 6 in total, any error is harmless. As I mentioned, there are a number of exhibits that were admitted at trial that she does not raise an appellate issue with that all reflect student and faculty and staff complaints as well. Those are Defendant's Exhibit 51. That's at the record at 3277. Defendant's Exhibit 58, which is page 3301 of the record. Defendant's Exhibit 13, which is page 3155 of the record. And Defendant's Exhibit 11 and Defendant's Exhibit 7. And Defendant's Exhibit 7 is Dean Murphy's report, which includes a summary of all of the complaints in Defendant's Exhibit 6. And that was offered by both parties. That was also Plaintiff's Exhibit 43. Moving to Dr. Wilder's second issue, the court did not abuse its discretion in denying her motion for mistrial. And there are two reasons why. First, the district court did not deny the motion for sanctions, and the court's order only said that SFA could not allude to the existence of these late-produced documents and could not have witnesses testify to a specific date when the decision not to renew her contract was made. There is no part of the court's order that prohibits arguments of counsel. And so to the extent, as Judge Haynes noted, that to the extent that Dr. Wilder wanted to rebut the arguments of counsel in closing, she certainly had that opportunity in her rebuttal. In her third issue, Dr. Wilder contends that the court abused its discretion when it allowed SFA to inquire into the bases for her mental anguish damages. But the court properly allowed testimony that Dr. Wilder herself believed that she was a victim of discrimination at her subsequent university. She sought compensatory damages at trial, and so the district court ruled that SFA was entitled to explore the bases for those damages, if any. And the court didn't err on this 403 balancing test. The court determined that SFA could not introduce or ask about the subsequent EEOC charge or any subsequent litigation. The only question that the court allowed SFA to ask was the reason why she believed her contract was non-renewed at Carlow University. This is like a car accident case. This is the issue of whether her purported injuries arise from a subsequent accident is highly relevant to the issue of damages. And that is how it was presented in closing by SFA. At page 2566 of the record, I told the jury, so back to her damages. First of all, I noted that there was not a day that she was unemployed. She went straight to Carlow University. And then I argued to the jury that they couldn't award damages to SFA for injury that was not attributable to an action that was not by SFA. So I disagree with Mr. Lieber that that evidence was used in some way with the jury to unduly prejudice her as a serial litigant. Thank you. In her final issue, Dr. Wilder contests the exclusion of comparator evidence. This was Dr. Cooper's complaint about her department chair. And once again, the district court did not abuse its discretion in this 403 balancing test. The court determined that this complaint made by a different faculty member in a different department to a different chair was sufficiently different from the complaints at issue with Dr. Wilder that they were more confusing to the jury than probative of any of the issues in the case. Plaintiffs proposed exhibit 68, 69, and 70. 69 and 70 are handwritten notes. There was no foundation for who that came from or that Dean Murphy had any knowledge about those. Plaintiffs' exhibit 68 was an email that he was copied on, but he testified he was on leave and had nothing to do with the university's response to any behavioral complaints that Dr. Cooper made about her chair. Finally, plaintiffs' proposed exhibit 71 is Dean Murphy's investigation into her pay complaint. And the basis of that pay complaint was whether her authorship of a book merited a pay increase. And in that report, Dean Murphy noted that Dr. Cooper had explicitly disavowed any notion of discrimination in bringing the complaint. It was simply an issue of policy about whether an authorship of a book should get her a step increase. Unless the court has any further questions, I'll cede the rest of my time. Thank you. Thank you, Ms. Hilton. Mr. Cleaver for rebuttal. Just a few points, Your Honor. First of all, there was no opening of the door. I think the Reyes case says when you present evidence, you don't open the door. In this case, it was a necessity that Dr. Wilder said that she didn't commit a crime in Texas. She did dispute that particular issue, and I think that was important. With regard to the last issue, I think we have enough of the same institutional decision-makers. Dean Murphy was alerted. University counsel, same university counsel, Mr. Derrick, was alerted, and it was clearly a matter for at least an investigation, which the school chose not to do. In terms of interrogatory number five, we have to rely on discovery answers, and the answer to interrogatory five appears in the record at 2927, and it says Dr. Wilder was detrimental to the social work program and to the university. Student and faculty complaints about her hostile behavior were voluminous, and repeated efforts to counsel Dr. Wilder over several years produced no improvement in behavior. Okay. The Provost Bullard said exhibit five was my answer. That's the reason. That's what we believed all through discovery. We did not know these staff complaints were going to come up. In terms of the whole issue of whether it was used as hearsay or not consistently, the judge said don't do that, that that's not the way it's going to be used, and in this circuit, I mean, you have a recent case, Bigney, B-I-G-N-E, where it says hearsay statements are inadmissible, where it appears that the real purpose for offering the evidence is to prove its truth rather than the effect on the listeners. Consistently, all through this case, that's what we were told, and some of these things, I mean, and the other thing that happened here was that the judge said to defense counsel, you can't bring in these students. We're not going to have 50 students come in and say, well, it really wasn't that bad, which is incidentally what was said by six students at the internal review. So he didn't allow that to happen. Your time has expired. Thank you, Your Honor. Your case and both of these cases are under submission.